# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **KIRSHA BROWN-YOUNGER**,        ) | |
|       ) | |
|       Plaintiff,        ) | |
|       ) | |
|       v.         ) | Case No. 12 C 1979 |
|       ) | |
| **LULU.COM**, et al.,       ) | |
|       ) | |
|       Defendants.      ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pro se plaintiff Kirsha Brown-Younger ("Brown-Younger") is totally out of control.[1]
Always combative, she has now unraveled to the point where she lashes out at everyone
(including this Court) who dares to disagree with her patent misapprehensions about the law
(about which she professes to be all-knowing). This Court has reached the conclusion that this
action has increasingly become a vehicle for abuse on Brown-Younger's part, rather than a
legitimate lawsuit. Accordingly this opinion will conclude by ordering her response as to why
dismissal of this action is not appropriate.

Lest there be any sense that this conclusion may simply be a reaction affected by
Brown-Younger's personalized attack on this Court, some substantial background explanation is
called for. This opinion therefore turns to a review of the bidding.

---

[1] During the 104 day time span that began with Brown-Younger March 19 submission of
her self-prepared Complaint and ended with June 30, this action amassed no fewer than 87
docket entries. During June alone Brown-Younger herself made 13 filings. But it is their
content rather than their volume that reveals a deeply disturbed individual whose fulminations
call for the consideration of possible sanctions, including the ultimate possibility of dismissal.
And because Brown-Younger's most recent filings include a June 27 motion for this Court's
recusal (Dkt. 83), this detailed opinion is called for both to demonstrate why sanctions must be
considered and then to show the emptiness of that motion to disqualify this Court.

On that score, to spare the reader the burden of having to retrieve this Court's recent June 19 memorandum opinion and order (Dkt. 67), a copy is attached to this opinion as Ex. 1, to enable it to be read at the outset -- that is, <u>now</u>. . . .  When that task has been completed, this opinion will then revert briefly to some of the very early history of this litigation, and it will then return to the present (post-June 19) developments that show the further obsessive misconduct by Brown-Younger that in this Court's view appears to cry out for dismissal.

It is a substantial understatement to say that this Court began its involvement in this case by extending to Brown-Younger every courtesy (as well as every benefit of the doubt).  Literally one day after the March 19, 2012 receipt of her Complaint in the Clerk's Office, with a delivery of the judge's copy to this Court's chambers taking place on that same March 19 date, this Court screened the pleading to determine its non-frivolousness.[2]  It found that Brown-Younger's claim of copyright infringement of her book of poems, <u>Glimpses of Life</u>, appeared plausible enough to satisfy that second component of in forma pauperis qualification, as set out in the cases referred to in n.2.

Accordingly this Court granted Brown-Younger in forma pauperis status immediately -- on March 20.  Then, when something over a month later Brown-Younger filed a Motion for Appointment of Counsel, it took this Court only a few days to obtain the name of a member of the District Court's trial bar to represent her on a pro bono publico basis and to appoint the lawyer for that purpose.

---

[2]  Although 28 U.S.C. § 1915A is limited to requiring such screening only in prisoner complaints, this Court follows that procedure as to all complaints tendered by pro se litigants who seek in forma pauperis treatment -- see <u>Lee v. Clinton</u>, 209 F. 3d 1025, 1026 (7th Cir. 2000) and later cases applying the same principle.

When it developed that the originally appointed counsel had a conflict of interest, this Court obtained the name of another trial bar member, who shortly thereafter sought and was granted leave to withdraw, after which a third lawyer was obtained for Brown-Younger from the same source. But within a few weeks after that last appointment, Brown-Younger filed a June 5 Motion for Sanctions (Dkt. 45) in which she leveled the following charges against that third counsel as well as against another lawyer who had been appointed to represent her in a different action pending before this Court's colleague Honorable George Lindberg (a case about which this Court has no knowledge):

> These Attorneys have jeopardized and sabotaged the integrity of this case, and the court. These Attorneys have committed abuse of process, by misrepresenting the Plaintiff, Kirsha Brown-Younger, on the basis of her disability and race. Both Attorneys have represented the opposing parties, and presented conduct that implies that they are working on the behalf of the opposing counsel. The Attorneys have violated FRCP Rule 11b, by conducting improper purpose.

This Court naturally viewed those accusations as evidencing Brown-Younger's desire to fire the third appointed counsel, and it immediately granted that relief -- but in its June 12 memorandum opinion and order that terminated the lawyer's representation it ordered him to file a written response to Brown-Younger's charges (meanwhile declining to appoint still another lawyer, pending what that response would reveal). Sure enough, the lawyer then filed a detailed and persuasive response that put the lie to Brown-Younger's scurrilous charges.[3] Understandably

---

[3] In what this Court has since learned is a pattern of conduct on Brown-Younger's part, she also filed charges against that same lawyer with the Illinois ARDC, which swiftly responded:

> We have reviewed the communication and have determined that no action by this Commission is warranted.

this Court determined that no new counsel would be appointed (a discretionary matter under this District Court's LR 83.39), so that since then Brown-Younger has again been acting pro se.

Only one other matter bears mention about the earlier proceedings in the case. When Brown-Younger sought the entry of an order of default against one of the defendants, Barnes & Noble, Inc., because it had failed to file a responsive pleading, this Court promptly granted that motion and confirmed that conversion of the order of default into a default judgment would require a prove-up hearing. Needless to say, nothing about that aspect of the case contained even a hint of bias on the part of this Court.

Fast forward then to the June 27 hearing that had been anticipated by the attached June 19 opinion. During the course of that hearing it developed that Brown-Younger had filed an ARDC charge (sound familiar?) against the lawyer for defendant Amazon.com, asserting that he had originally appeared on her behalf but had then withdrawn to appear for Amazon -- a clear conflict of interest charge, but simply a flat-out lie. When called on that falsehood, Brown-Younger first crawfished ("I had so many lawyers, several court-appointed, in getting on my case and withdrawing"), after which this Court inquired whether she felt that it was all right "to shoot first and ask questions later." This exchange then took place:

> THE COURT: Do you know what a lawyer's reputation involves? Do you know that the idea of filing with the ARDC a complaint about a lawyer is a serious matter?
>
> MS. BROWN-YOUNGER: I have an absolute right to do that. I reserve the right to file it.
>
> THE COURT: You have a right to do that?
>
> MS. BROWN-YOUNGER: The main reason why I filed a complaint against him is because he contacted me e -- by e-mail requesting in his office

- 4 -

discovery, that I would -- you know, and I felt like it was ex parte [sic!] communication.

Quite apart from Brown-Younger's apparent predilection for trotting out legal terms and concepts without really knowing what they mean ("ex parte," indeed), her purported explanation is no explanation at all.

As to Amazon, the same June 27 hearing confirmed not only that Amazon had never purchased or sold the Brown-Younger book, but also that the book had not even been listed for sale on Amazon's website. Amazon's counsel had therefore sent Brown-Younger a Fed. R. Civ. P. ("Rule") 11 letter asking that she withdraw her claim against it, triggering a lame excuse on her part that she had assumed that if the book was listed on other booksellers' websites it would have been on Amazon's as well.

To any objective observer, that renders even more shocking the totally false personal attack that Brown-Younger had launched against Amazon's counsel. Despite her protestations that she has a First Amendment right to have done what she did, such a "right" must be understood in the Holmesian sense that anyone who exercises a claimed "right" that harms another must be prepared to pay the price that the law may attach to that exercise. Here it would be totally unfair to Amazon's counsel for Brown-Younger's ARDC charge to be left uncorrected by her, and she is accordingly ordered to file an appropriate retraction and withdrawal of that charge with the ARDC on or before July 12, 2012, with a copy of her filing to be delivered to this Court's chambers solely for informational purposes (not for filing).

This opinion now turns to Barnes & Noble's June 29 presentment of its motion to vacate the order of default that this Court had entered against it -- a motion that Brown-Younger

claimed had not been properly noticed (another of her falsehoods).  Moreover, that motion and its June 29 scheduling had been expressly spoken of during the June 27 hearing, when this Court had inquired as to whether Barnes & Noble's lawyer was expected to join those present for the hearing.  Not only was Brown-Younger present during that discussion, but it is also noteworthy that her extraordinarily frequent filings and her frequent oral references to current filings confirm her daily monitoring of the docket.  But in any event, Brown-Younger called this Court's chambers at 5:55 a.m.(!) on June 29 to say that she would not appear in court that day, at which point this Court -- understandably the only one in chambers at such an early hour, so that he had answered the phone himself -- referred to the discussion during the June 27 hearing and advised Brown-Younger that this Court would not anticipate ruling on the motion in her absence, so that if Barnes & Noble's lawyer appeared to present the motion Brown-Younger might possibly incur the cost of Barnes & Noble's dry run.  This Court then terminated the call.

When the Barnes & Noble motion was called for hearing on this Court's June 29 motion call, Brown-Younger was indeed absent, while the Barnes & Noble lawyer appeared in accordance with its notice of motion.  Just as this Court had told Brown-Younger, it advised counsel that it would not rule on the motion in Brown-Younger's absence -- nor of course would it do so without giving her a full opportunity to respond.  When Barnes & Noble's local counsel responded in part by referring to a threat by Brown-Younger to log an ARDC charge against its California lawyer (does that sound even more familiar?), this Court requested and was provided copies of that e-mail and another e-mail that Brown-Younger had transmitted after her June 29 call to this Court's chambers.  Those e-mails are also attached as Exs. 2 and 3 to provide further insight into the "totally out of control" characterization set out at the very beginning of this

opinion.

It will be recalled that the second paragraph of this opinion referred to Brown-Younger's "personalized attack" on this Court. That has taken the form of a motion for this Court's disqualification (Dkt. 83) filed on June 27.[4] This Court has deferred consideration of that motion to this point because what has been discussed up until now demonstrates the utter poverty of Brown-Younger's position.

To begin with, any notion of purported personal bias on this Court's part should first be looked at in light of what has become known as the "extrajudicial source" doctrine, as to which the leading case of <u>Liteky v. United States</u>, 510 U.S. 550-51 (1994) has said this in part:

> The judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant, who has been shown to be a thoroughly reprehensible person. But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings, and are indeed sometimes (as in a bench trial) necessary to completion of the judge's task. As Judge Jerome Frank pithily put it: "Impartiality is not gullibility. Disinterestedness does not mean child-like innocence. If the judge did not form judgments of the actors in those court-house dramas called trials, he could never render decisions." *In re J. P. Linahan, Inc.*, 138 F. 3d 650, 654 (CA2 1943).

Just two weeks ago our Court of Appeals put the same concept succinctly in these terms (<u>Khor Chin Lim v. Courtcall, Inc.</u>, No. 12-1265, 2012 WL 2305631 at *2 (7th Cir. June 19)), rejecting a litigant's effort to disqualify that court based on its rulings adverse to him:

---

[4] As if to underscore the irony of her charging this Court with having violated her rights, on the very next day -- June 28 -- Brown-Younger delivered a copy of her motion to the Chief Judge of this District Court and also filed a Judicial Misconduct Complaint with our Court of Appeals, both without this Court having had an opportunity to address her motion. Needless to say, the Chief Judge of the Court of Appeals immediately dismissed the latter complaint as outside of that Court's jurisdiction, while on the following day the Chief Judge of the District Court rejected the motion as beyond his authority.

He contends that the orders we entered in this case and in *Staples* show that we are biased against him. This contention is frivolous. Adverse decisions do not establish bias or even hint at bias.

But it is totally unnecessary to rely on that "extrajudicial source" legal doctrine to reject the motion for recusal -- one that reflects (again ironically) the bias that this vengeful litigant harbors against anyone whom she perceives as crossing her. Here it is not simply that this Court has reached and expressed its views as to Brown-Younger based entirely on what her conduct in this litigation has revealed -- it is also essential to understand that this Court harbors no personal animus or malice toward her. To this Court Brown-Younger is far more to be pitied than censured, for it is almost uncanny how she finds it possible to articulate arguments while totally lacking the ability to listen to why her arguments have no merit.[5]

As she did with her former lawyer in her earlier-referred-to motion for sanctions, Brown-Younger charges this Court with bias based on her race and disability and her pro se status. That first claim is nothing short of outrageous -- Brown-Younger ought to engage in some inquiry and investigation before launching such a charge. As for disability, the only "disability" of which this Court is aware is Brown-Younger's inability to listen, in which she has exhibited the legal equivalent of a music critic who is tone deaf. And as to Brown-Younger's status as a pro se litigant, the description earlier in this opinion of this Court's efforts on her

---

[5] One example is her persistence in arguing that her contractual undertaking with Lulu to submit all disputes to arbitration is somehow trumped by the alternative dispute resolution provision of Title 28 that applies to the potential for such a <u>court</u>-ordered alternative, as contrasted with the contractual agreements to which the Federal Arbitration Act applies. This Court explained that distinction to Brown-Younger when she first raised the issue, only to find her repeating it once again in a heedless filing.

behalf in that regard torpedoes any claim of bias.  In sum, Brown-Younger's groundless motion for disqualification is denied out of hand.

What then does all that has gone before call for in terms of this litigation as such?  It has been said earlier that this Court's original grant of in forma pauperis status was based on the surface plausibility of the Brown-Younger Complaint.  But what has been learned since is that her claim is virtually bankrupt in substantive terms:

1.    Brown-Younger's claim against defendant Lulu is assertable only in arbitration, not in litigation, under the terms of the Membership Agreement that she entered into with Lulu.  And the fact that Lulu's total sales of Brown-Younger's book of poetry amounted to four copies, two of which she bought herself, renders her effort to mulct defendants (including Lulu) for copyright infringement damages in excess of $150,000 (at one point in her filings she has upped the ante to $750,000) cannot be advanced in good faith.

2.    As to all of Brown-Younger's other targeted defendants, none has been shown to have sold even a single copy of her work, with each having represented that it has conducted a file search that confirms such to be the case.  And that negates liability and damages altogether -- 2 Goldstein on Copyright § 7.5.1 (3d ed. 2011) states that for a copyright infringement action to be viable "an actual transfer must take place" and "a mere offer of sale will not infringe the right."

3.      Brown-Younger's inclusion of Amazon as a defendant, as stated earlier, is

totally indefensible.

In short, if this Court had known then what it knows now about the poverty of

Brown-Younger's substantive claim, she would not have gotten out of the starting gate because

she would have flunked the requirement exemplified by <u>Lee v. Clinton</u>.  Meanwhile,

Brown-Younger plainly appears during the pendency of this action -- despite its temporal

brevity -- to have committed multiple violations of Rule 11(b).  In that respect, our Court of

Appeals' per curiam opinion in <u>Gay v. Chandra</u>, No. 11-2523, 2012 WL 1939916, at *5 (7th Cir.

May 30) has summarized the operative law in these terms:

> Nevertheless, district courts also can impose both monetary and non-monetary
> sanctions under Rule 11 for filing or maintaining claims for an improper purpose
> or without adequate legal or factual support.  Fed. R. Civ. P. 11(b), (b); *see*
> *Fabriko Acquisition Corp. v. Prokos*, 536 F.3d 605, 609-10 (7th Cir. 2008).

As plain as Brown-Younger's multiple Rule 11 violations appear to be, Rule 11(c)(3) calls for her

to be given the opportunity to show cause why no such violations have taken place and, in this

instance, why dismissal of this action is not an appropriate sanction.  This Court orders her to file

such a showing on or before July 24, 2012.


_____
Milton I. Shadur
Senior United States District Judge


Date:  July 3, 2012.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KIRSHA BROWN-YOUNGER,  )
                       )
          Plaintiff,   )
                       )
     v.                )          Case No. 12 C 1979
                       )
LULU.COM, et al.,      )
                       )
          Defendants.  )

## MEMORANDUM OPINION AND ORDER

Issuance of this memorandum opinion and order follows a number of stillbirths. Each successive filing in the steady flow generated by pro se plaintiff Kirsha Brown-Younger ("Brown-Younger") has posed some type of problem that stimulates the need to provide a judicial response or ruling – most often critical in nature. But the conversion of this Court's dictation via Dictaphone into its final form after transcription by its secretary, followed by its own final editing, has been dramatically slowed by the current unavailability of its permanent secretary coupled with the extremely limited availability of temporary secretarial service. As a result, the several false starts have had to be merged into this opinion in an episodic fashion.

No effort has been made here to list the matters in some order of importance or to follow the chronology of Brown-Younger's submissions. But the end result of her serious abuse of the litigation process has been to cast more than a serious doubt as to her entitlement to proceed with this lawsuit. This opinion is issued sua sponte to explain why.

That said, it is logical to begin with the posture of the case vis-a-vis Lulu Press, Inc. ("Lulu", which Brown-Younger mistakenly lists in her Complaint as Lulu.com) – not just because Lulu is Brown-Younger's first-named defendant but also because her self-publication of her book of poetry through Lulu marks the origin of the claimed copyright infringements charged in this litigation. On

Ex. 1

June 14 Brown-Younger filed a motion for entry of a default against Lulu. But what she does not acknowledge (but the court record expressly reflects) is that her then-appointed counsel had agreed to, and this Court had accordingly ordered on May 30, a brief further extension (until June 15) for Lulu to plead to the Complaint – an entirely reasonable matter of professional courtesy, although not perhaps to a litigant as combatant as Brown-Younger. Thus Lulu has in fact filed a timely response (of which more is said later) on June 15, so that the motion for default is denied.

At least as importantly, Lulu's June 15 response – a motion for dismissal or stay – includes as an exhibit the document pursuant to which Brown-Younger's self-publication of her work took place – and that document, a comprehensive Membership Agreement required of every new registrant with Lulu, includes an express agreement (part of its paragraph 16) to resolve any dispute that cannot be settled in good faith negotiation through arbitration rather than litigation, and to do so in North Carolina to boot. All that Brown-Younger says to that, in a mixed-bag June 18 filing,[1] is this:

> She claims that she does not recall reviewing nor signing a contractual agreement with Lulu.com. She also claims that she believes that this Contract was not available for review 5-6 yrs ago when she signed up for an account with lulu.com. She claims that she is sure that at the time, 5-6 yrs ago, Lulu.com website had stated "that there is no contract, and we do not market, distribute or sell your book for you, and Authors have to self-market their own book."

From that combination of a lack of recollection together with her wholly unsupported claims, she springboards into charging Lulu with having concocted a fraudulent exhibit ("a contract such as the one that Lulu fraudulently drafted, in order to defend themselves in this suit").

---

[1] That filing is captioned in this manner:

> Motion for Stay on Proceedings To Enforce Judgement [sic];
> Motion for Relief from Order;
> Motion Requesting Pre-trial Discovery

2

Ex. 1

There is no reason to credit Brown-Younger's purported reply — to the contrary, the very nature of Lulu's existence is totally consistent with the kind of contractual restrictions that its exhibit portrays, applicable to everyone that makes use of its services (and not just Brown-Younger).

And that is only one nail in the coffin into which Brown-Younger appears to have buried her claim to credibility. For example, in that same June 18 filing she asks that "the proceedings should be stayed pending the results of the FBI investigation into copy right infringement, because she claims that she had filed a complaint with the Bureau."

That type of lashing out appears to typify Brown-Younger's reaction to anyone whom, or to anything that, she regards as having interfered with her self-defined goals. Thus she had earlier filed a motion for sanctions against her former counsel,[2] to which he has now filed his response. That response refutes her accusatory charges chapter and verse, reporting among other things that:

1. Lulu had telephoned him to say that just four of Brown-Younger's books had been sold (two to Brown-Younger herself) and that it had tried to communicate with Brown-Younger to send the royalties — but Brown-Younger had let her account lapse or go dormant and did not respond to e-mails.

2. Co-defendant Amazon had sent him copies of several letters that it had addressed to Brown-Younger, stating that it had never sold any copies of her book and demanding its dismissal from the action, failing which it was prepared to seek sanctions against her (including sanctions under Fed. R. Civ. P. ("Rule") 11).

3. Perhaps most significantly in light of what is presently under discussion, Brown-Younger filed charges against her appointed counsel before the ARDC a week before the two of them even met and spoke for the first time.

This opinion will not repeat all of counsel's recitation of, and persuasive answers to, Brown-Younger's accusations — his response should be read to appreciate its full flavor.

---

[2] Confusingly, that motion was coupled with her also seeking sanctions against still another lawyer, who was appointed to represent her in an unrelated case pending before this Court's colleague Honorable George Lindberg.

3

Ex. 1

What has been said to this point is all of a piece with a single-spaced "Motion for Criminal Sanctions" that Brown-Younger filed on June 14, in which it has targeted co-defendant Apple, Inc. ("Apple," incorrectly named in the Complaint as iTunes/Apple and iBookstore). That filing also provides an insight into Brown-Younger's abuses of litigants and the litigation system as such.[3]

But before this opinion turns to the substance of that filing, a brief digression is in order. As a purely procedural matter, this Court confesses to having been delinquent in not previously insisting on Brown-Younger's compliance with the straightforward format requirements of this District Court's LR 5.2. Although this Court is disinclined to nitpick where such matters are concerned, Brown-Younger's periodic (and inconsistent) submission of single-spaced and small-type documents really cannot be tolerated – pro se parties are not held to the same standards as lawyers, but they are obligated to familiarize themselves with the requirements of local rules as well as the Federal Rules of Civil Procedure.[4] Accordingly, Brown-Younger's motion is stricken on procedural grounds, though what follows here shows its substantive flaws as well.

As for its substance, that June 14 attack on Apple by Brown-Younger provides another nail in the earlier-mentioned figurative coffin that buries her entitlement to credibility. Leave aside the fact that this Court is not in the business of issuing criminal sanctions – defining and prosecuting crimes are of course functions of the United States Attorney's office. Even apart from that, though,

---

[3] Apple had filed its Answer to the Complaint on June 13, before Brown-Younger launched her attack discussed in the text. Under the circumstances this Court will not address that filing at this time, other than to say that Apple need not supplement that filing to deal with the now stricken motion.

[4] That should certainly be expected of Brown-Younger, who is no stranger to the federal courts. This Court's extraordinarily able and courteous minute clerk's subjection to some verbal abuse by Brown-Younger stimulated her recollection of some prior history before this Court, in which Brown-Younger (then simply "Kirsha Brown") sued the FBI not once but twice (in 06 C 5336 and 08 C 484). This Court's binders, in which it retains copies of a good many of its earlier memorandum orders or opinions, reveals the dismissal of those actions based on their frivolousness. And the District Court records also include other cases launched pro se by Kirsha Brown or Kirsha Brown-Younger.

Ex. 1

Brown-Younger is cautioned that her free use of such pejorative characterizations as "fraud, theft, and crime" and "piracy" on the part of her opponents is not risk-free conduct. Even though the laws of libel provide immunity for language used in court pleadings, unrepresented parties (like lawyers) are also subject to the obligations imposed by Rule 11(b) -- and like lawyers, unrepresented parties who violate those obligations may themselves become subject to the imposition of appropriate sanctions under Rule 11(c).

Though other examples of Brown-Younger's misconduct in this litigation could be provided, it really seems needless to go on in this vein. To go back to the point of beginning, it should be remembered that our Court of Appeals' teaching as to litigants who seek in forma pauperis status is to require not only a showing of their financial qualification for such treatment but also their assertion of some non-frivolous claim (see, e.g., Lee v. Clinton, 209 F.3d 1025, 1026 (7th Cir. 2000)). This Court's initial take on Brown-Younger's Complaint was that it met that test – indeed, that it satisfied the "plausibility" yardstick now prescribed by the Twombly-Iqbal canon. But developments since then have created a major doubt (perhaps an understatement) as to whether Brown-Younger's filings meet the test of objective good faith demanded by Rule 11(b). With Lulu having noticed up its motion for dismissal or stay to be presented at 9:15 a.m. June 27, Brown-Younger is ordered to appear at that time to answer this Court's questions on that score – questioning that she is warned may trigger the ultimate sanction of dismissal.

One final note should be sounded in that respect. This Court is of course well aware that Rule 11(b), which sets the standard of objective good faith applicable to unrepresented parties as well as lawyers, does not carry with it a specific warrant for dismissal of an action – instead the references here to Brown-Younger's violations of that Rule are included to provide one example of her misconduct in the course of this lawsuit. And this Court is equally aware that if it had known at the time of filing what it now knows, it would have denied Brown-Younger's motion for in forma pauperis treatment – but that would have called not for dismissal but only for her payment of the

5

Ex. 1

$350 filing fee as the price for proceeding with her action. What has been demonstrated here instead is a litigant who has engaged in extensive impermissible conduct (including personal abuse and unwarranted charges against those whom she regards as standing in her way) — and that in abundant combination is what may well call for dismissal of her lawsuit. As stated earlier, that subject will be explored at the June 27 hearing.[5]

_Milton I. Shadur_
Milton I. Shadur
Senior United States District Judge

Date: June 19, 2012

---

[5] As if to underscore what was said in the first paragraph of this opinion, Brown-Younger has just delivered to this Court's chambers (even while this opinion was being edited finally to pick up a few word changes and typographical errors) a June 19 filing captioned "Motion Requesting Trial Demurrer – Opposition Response." That newest filing in reply to Lulu's motion reflects her totally unwarranted "construction" of the alternative dispute resolution provision of 28 U.S.C. § 654 as somehow invalidating the privately-agreed-upon arbitration provisions of the Federal Arbitration Act. When Alexander Pope opined that "A little learning is a dangerous thing" (Essay on Criticism pt. 2, line 15), he did not mean to negate the obvious truth that a lack of learning is likely to be even more dangerous.

6

Ex. 1

| | |
|---|---|
| **From:** | David Eiseman |
| **Sent:** | Thursday, June 28, 2012 10:46 PM |
| **To:** | Amanda Williamson |
| **Subject:** | FW: Brown-Younger v. Lulu.com, et al., Case No. 1:12-cv-01979 (N.D. Illinois) |

**From:** KirshA Brown [mailto:kirsha29@gmail.com]
**Sent:** Thursday, June 28, 2012 5:47 PM
**To:** David Eiseman
**Subject:** RE: Brown-Younger v. Lulu.com, et al., Case No. 1:12-cv-01979 (N.D. Illinois)

Excuse me I am well versed in law, and this is a abuse of process, pursuant to rule 5. First of all, I do not know why you are rendering ex parte, illegal email communications, and pleading your case to me through email. That is a serious argument, however that argument should have been pleaded and submitted to the court within 21 days from the time service of process was served. Were'nt barnes properly served, yes they were, and that was your time to respond on court record. Let me remind you that despite the judges tyrannical judicial misconduct, I am lodging my complaint against you with the ARDC tommorow by fax, and you will be investigated. Let me also remind you that the judge is under investigation and recusal is pending and he will step down from my case. All of you can receive charges for corruption, I assure you. I have a right to file suit and I refuse to legally plead my case with you via email, so its best to refer to the ecf/pacer. Save your arguments for the hearing tommorow. Furthermore, a appeal will be commenced for every order the Judge renders in your favor. Good day.

On Jun 28, 2012 6:38 PM, "David Eiseman" <davideiseman@quinnemanuel.com> wrote:

Ms. Brown-Younger, per your request, the text of my letter to you is set forth below.

June 28, 2012

Via E-Mail

Kirsha Brown-Younger

6434 North Magnolia, Apt. 1

Chicago, IL 60626

Re:   Brown-Younger v. Lulu.com, et al., Case No. 1:12-cv-01979 (N.D. Illinois)

1

Ex. 2

Dear Ms. Brown-Younger:

We represent Defendant Barnes & Noble in this case. By this letter, Barnes & Noble requests that you withdraw your complaint against it.

Federal Rule of Civil Procedure 11 requires that those who file pleadings with the court base their allegations and claims on factually and legally supportable grounds. Fed. R. Civ. P. 11 (b); *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1121 (7th Cir. 1192). An unrepresented party who signs a pleading without first conducting a reasonable inquiry into the underlying facts and law may be liable for sanctions. Fed. R. Civ. P. 11(c).

The Complaint in this case does not comply with Rule 11 because it is clear that there was no reasonable inquiry into the relevant facts and law prior to the filing of your claims against Barnes & Noble. As Barnes & Noble demonstrated in its pending motion to set aside default (Dkt. 75) and the accompanying declaration of Bradley A. Feuer in support of its motion, Barnes & Noble never distributed, transferred, or sold a single copy of "Glimpses of Life." (Feuer Decl. ¶ 2; Exh. 1, at 3-4.) Barnes & Noble, therefore, has not infringed your purported copyright. *See, e.g.*, 2 GOLDSTEIN ON COPYRIGHT § 7.5.1. (3d ed. 2011) (stating that in order for an action for copyright infringement to lie "an actual transfer must take place" and that "a mere offer of sale will not infringe the right") (citing *Obolensky v. G.P. Putnam's Sons*, 628 F. Supp. 1552, 1555 (S.D.N.Y. 1986) ("[T]here is no violation of the right to vend copyrighted works . . . where the defendant offers to sell copyrighted materials but does not consummate a sale")); *New Name, Inc. v. Walt Disney Co.*, No. 07-cv-5034, 2007 WL 5061697, *4 (C.D. Cal. Dec. 3, 2007) ("Offering for sale is not enough [to constitute copyright infringement]; a defendant must have actually completed a sale.").

The absence of any act of infringement means that there is no good faith basis to pursue any claims against Barnes & Noble in this case. Further, Barnes & Noble has removed "Glimpses of Life" from its online catalog, eliminating any potential for future infringement or damages. (Feuer Decl. ¶ 2.)

Accordingly, Barnes & Noble requests that you dismiss with prejudice your claims against Barnes & Noble by the close of business on July 21, 2012. If we do not receive your notice of voluntary dismissal by that date, Barnes & Noble will be forced to seek involuntary dismissal and Rule 11 sanctions.

Very truly yours,

*David Eiseman*

David Eiseman

DE/nm

cc:     Bradley Feuer

**From:** KirshA Brown [mailto:kirsha29@gmail.com]
**Sent:** Thursday, June 28, 2012 4:31 PM
**To:** David Eiseman
**Subject:** Re: Brown-Younger v. Lulu.com, et al., Case No. 1:12-cv-01979 (N.D. Illinois)

I am on my phone and I would appreciate if you copy and paste the letter into the compose box, and re-send, because I do not have attachment capabilities on my internet phone. Thank you.

On Jun 28, 2012 6:28 PM, "David Eiseman" <davideiseman@quinnemanuel.com> wrote:

Ms. Brown-Younger, please see the attached letter.

David Eiseman
Quinn Emanuel Urquhart & Sullivan, LLP

50 California Street, 22nd Floor
San Francisco, CA 94111
415-875-6314 Direct
415.875.6600 Main Office Number
415.875.6700 FAX
davideiseman@quinnemanuel.com
www.quinnemanuel.com

NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.

| From: | KirshA Brown [kirsha29@gmail.com] |
|---|---|
| Sent: | Friday, June 29, 2012 6:37 AM |
| To: | Amanda Williamson |
| Subject: | Fwd: Re: Brown-Younger v. Lulu.com, et al., Case No. 1:12-cv-01979 (N.D. Illinois) |

---------- Forwarded message ----------
From: "KirshA Brown" <kirsha29@gmail.com>
Date: Jun 29, 2012 6:23 AM
Subject: Fwd: Re: Brown-Younger v. Lulu.com, et al., Case No. 1:12-cv-01979 (N.D. Illinois)
To: <davideiseman@quinnemanuel.com>

---------- Forwarded message ----------
From: "KirshA Brown" <kirsha29@gmail.com>
Date: Jun 29, 2012 6:21 AM
Subject: Re: Brown-Younger v. Lulu.com, et al., Case No. 1:12-cv-01979 (N.D. Illinois)
To: "David Eiseman" <davideiseman@quinnemanuel.com>

Hello, I just spoke with Judge Shadur, and I explained to him that I am unable to appear for this hearing today at 9:15. I was just notified of this hearing Wednesday, to my shock, and I was not properly notified of this hearing in advance. I have a matter to attend to today, and I will be visiting the 1st circuit appeals court today, in order to lodge another Judicial misconduct complaint, and address the fact that I am strongly demanding that the Judge disqualifies himself, pursuant to sec. 455, due to his impartiality being reasonably questioned. I am also entering an appeal against amazon, lulu, apple etc, from the order on wednesday. Also, I have experience litigating in Appellate court, and Barnes will be paying high costs to defend themselves in this Appeal. Hopefully, this Judge disqualifies himself, required by law, and this case is transfered to a more suitable Judge. It is in all parties best interest that this Judge is disqualified because this litigation process has been severely impaired and negatively effected to the detriment of all parties on this case. I am requesting that you reschedule this hearing for default next week, anytime and I will appear. Listen, I submitted a copy of my book, an exact copy of "Glimpses of Life", on Barnes and Nobel website selling for $6.99, this exhibit was submitted to the clerks office, please refer to that exhibit. Marketing my book online without my expressed consent or knowledge is copyright infringement and my work is registered with the Copyrights office in 2005. It is in Barnes best interest to settle, because this case will be appealed. I and Barnes are being deprived of justice, by this Judge, due to his partiality. Barnes will pay high court costs if this matter is appealed. There is a fbi investigation into copyright infringement pending, and it may shed a favorable light on Barnes to settle, and charges may be decreased. This investigation can result in jail time or fines. Barnes committed a crime. So, discuss these possibilities with Barnes. I spoke with Judge Shadur today, and he hung up in my face, but he requested that I contact you, regarding my failure to appear, due to his partiality and abuse. Thank you, Kirsha Brown Younger

On Jun 28, 2012 6:28 PM, "David Eiseman" <davideiseman@quinnemanuel.com> wrote:
>
> Ms. Brown-Younger, please see the attached letter.
>
>
>
>
>

1

Ex 3

> David Eiseman
> Quinn Emanuel Urquhart & Sullivan, LLP
>
> 50 California Street, 22nd Floor
> San Francisco, CA 94111
> 415-875-6314 Direct
> 415.875.6600 Main Office Number
> 415.875.6700 FAX
> davideiseman@quinnemanuel.com
> www.quinnemanuel.com
>
> NOTICE: The information contained in this e-mail message is intended only for the personal and confidential use of the recipient(s) named above. This message may be an attorney-client communication and/or work product and as such is privileged and confidential. If the reader of this message is not the intended recipient or agent responsible for delivering it to the intended recipient, you are hereby notified that you have received this document in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this communication in error, please notify us immediately by e-mail, and delete the original message.
>
>

Ex. 3